## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY X, | : | |
| **Plaintiff,** | : | |
| | : | **No. 1:18-cv-00903** |
| v. | : | |
| | : | **(Judge Kane)** |
| UNITED STATES OF AMERICA, <u>et al.</u>, | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the Court is the motion to dismiss and/or for summary judgment (Doc. No. 76) filed by Defendants United States of America, C/O Rummel ("Rummel"), C/O Benjamin Missigman ("Missigman"), and C/O Beaver ("Beaver"). <u>Pro se</u> Plaintiff Rodney X ("Plaintiff")[1] has filed neither a response nor a motion seeking an extension of time to do so. Accordingly, because the time for filing a response has expired, Defendants' motion is ripe for disposition.

## I. BACKGROUND

On April 27, 2018, Plaintiff, who is presently incarcerated at the Administrative United States Penitentiary in Thomson, Illinois ("AUSP Thomson"), initiated the above-captioned action by filing a complaint against the United States of America pursuant to the Federal Tort Claims Act ("FTCA") and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), alleging that the Bureau of Prisons ("BOP") erroneously designated him as a sex offender in his inmate file, and that this designation resulted in him being threatened and assaulted by other inmates while incarcerated at USP Lewisburg and USP Terre Haute. (Doc. No. 1.) Plaintiff subsequently filed an amended complaint (Doc. No. 5), as well as two addenda and an affidavit (Doc. Nos. 10, 11, 12). By Memorandum and Order

---

[1] In an Order dated May 18, 2021, the Court granted Plaintiff's request to be referred to as "Rodney X, a/k/a Rodney Othel McIntosh." (Doc. No. 73.)

entered on June 1, 2018, the Court dismissed Plaintiff's <u>Bivens</u> claims as well as his defamation claim under the FTCA, and directed service of his amended complaint on the United States so that his negligence claim under the FTCA could proceed.  (Doc. Nos. 13, 14.)

On July 31, 2018, the United States filed a motion to dismiss, or in the alternative, for summary judgment (Doc. No. 23), arguing that: (1) the Court lacked subject matter jurisdiction over Plaintiff's negligence claim due to the misrepresentation exception and, alternatively, the discretionary function exception, and (2) also in the alternative, the United States was entitled to summary judgment because it neither breached nor owed a duty to Plaintiff, nor did it cause his alleged injuries.  Magistrate Judge Carlson issued a Report and Recommendation on March 7, 2019 (Doc. No. 50), recommending that the Court grant the United States' motion.  Specifically, Magistrate Judge Carlson concluded that: (1) Plaintiff's negligence claim was barred by the discretionary function exception to the FTCA;[2] and (2) even if the claim were not barred, Plaintiff failed to state a claim for negligence against the United States.  On March 25, 2019, the Court received Plaintiff's objections to the Report and Recommendation.  (Doc. No. 52.)  In an Order dated March 31, 2019, the Court adopted the Report and Recommendation, overruled Plaintiff's objections, and granted the United States' motion to dismiss or, in the alternative, for summary judgment.  (Doc. No. 54.)

Plaintiff filed a timely notice of appeal.  (Doc. No. 56.)  On February 4, 2021, the United States Court of Appeals for the Third Circuit vacated in part this Court's June 1, 2018 Memorandum and Order dismissing Plaintiff's <u>Bivens</u> claims concerning due process violations

---

[2] Magistrate Judge Carlson concluded that the misrepresentation exception was inapplicable to Plaintiff's case because "the gravamen of [Plaintiff's] complaint is that the BOP breached a duty to keep him safe by misclassifying him as a sex offender, not that it breached a duty to him regarding the communication of information."  (Doc. No. 50 at 10.)

and verbal abuse.  See McIntosh v. United States, 845 F. App'x 88, 90-91 (3d Cir. 2021).  The Third Circuit agreed that dismissal of Plaintiff's claims for libel, slander, and defamation under the FTCA was proper.  See id. at 91.  The Third Circuit also vacated this Court's March 31, 2019 Order granting the United States' motion to dismiss or, in the alternative, for summary judgment, concluding that summary judgment was premature.  See id. at *91-93.

The Third Circuit's mandate issued on March 29, 2021.  (Doc. No. 63.)  In an Order dated March 30, 2021, this Court reopened the above-captioned action.  (Doc. No. 64.)  The Court noted further that it could not proceed on Plaintiff's Bivens claims as pled because he had named the United States as the sole Defendant, and Bivens claims against the United States are barred by sovereign immunity.  (Id. at 2-3.)  The Court, therefore, directed Plaintiff to file an all-inclusive second amended complaint "that sets forth his Bivens due process claims and Eighth Amendment verbal abuse claims against the individuals who allegedly violated his rights, as well as his FTCA negligence claim against the United States."  (Id. at 3.)

Plaintiff subsequently filed a "motion for Court to add Defendants to 28 U.S.C. § 1331" (Doc. No. 65), which the Court construed as his response to its March 30, 2021 Order.  In that document, Plaintiff added Unit Manager Royer ("Royer"), Registered Nurse Tracy Herser ("Herser"), Counselor M. Tatlock ("Tatlock"), C/O Gilbert ("Gilbert"), Rummel, Missigman, and Beaver as Defendants.  (Id.)  In an Order dated April 19, 2021, the Court deemed the operative pleading in this matter to consist of Plaintiff's complaint (Doc. No. 1), three (3) addenda (Doc. Nos. 5, 10, 11), and his "motion for Court to add Defendants to 28 U.S.C. § 1331" (Doc. No. 65).  (Doc. No. 66.)  The Court transferred Plaintiff's claims against Defendants Royer, Herser, Tatlock, and Gilbert to the United States District Court for the Southern District of Indiana because Plaintiff's Bivens claims against them concerned events that

3

occurred at USP Terre Haute.  (Id.)  The Court also directed service of the complaint upon Defendants Rummel, Missigman, and Beaver.  (Id.)

After receiving an extension of time to do so (Doc. Nos. 74, 75), Defendants filed their motion to dismiss and/or for summary judgment (Doc. No. 76) on June 21, 2021.  They filed their statement of facts and brief in support on July 6, 2021.  (Doc. Nos. 77, 78.)  On July 7, 2021, observing that Defendant raised the issue of whether Plaintiff properly exhausted his administrative remedies with respect to certain claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[3]  (Doc. No. 79.)  The Court directed Plaintiff to file a brief in opposition addressing the issue of administrative exhaustion and a statement of material facts responding to Defendants' statement within thirty (30) days. (Id.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

---

[3] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

4

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v.

Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document

filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A

pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than

formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that

would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B.      Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides

that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the

outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers,

Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477

U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283,

1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view

the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler,

6

986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992);

White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary

judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his

or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56

of identifying evidence that demonstrates the absence of a genuine issue of material fact, the

nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to

interrogatories, or the like in order to demonstrate specific material facts that give rise to a

genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the

motion "must do more than simply show that there is some metaphysical doubt as to the material

facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule

56 shifts the burden of production to the nonmoving party, that party must produce evidence to

show the existence of every element essential to its case that it bears the burden of proving at

trial, for "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also

Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

　　　　As noted supra, when determining whether an issue of material fact exists, the Court must

consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at

59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any

conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary

judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional

party to submit a "statement of the material facts, responding to the numbered paragraphs set

forth in the statement required [to be filed by the movant], as to which it is contended that there

exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in

the statement required to be served by the moving party will be deemed to be admitted."  <u>See</u>

L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing

the fact that he is a <u>pro</u> <u>se</u> litigant.  These rules apply with equal force to all parties.  <u>See</u> <u>Mala v.</u>

<u>Crown Bay Marina, Inc.</u>, 704 F.3d 239, 245 (3d Cir. 2013) (noting that <u>pro</u> <u>se</u> parties "cannot

flout procedural rules—they must abide by the same rules that apply to all other litigants").

        **C.**      <u>**Bivens** Action</u>

A <u>Bivens</u> civil rights action asserted under § 1331 is evaluated using the same standards

applicable to a § 1983 civil rights action.  <u>See</u> <u>Paton v. LaPrade</u>, 524 F.2d 862, 871 (3d Cir.

1975); <u>Veteto v. Miller</u>, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992).  To state a claim under

<u>Bivens</u>, a plaintiff must allege that he was deprived of a federal right by a person acting under

color of federal law.  <u>See</u> <u>Young v. Keohane</u>, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

III.    STATEMENT OF MATERIAL FACTS[4]

Plaintiff is a "federal inmate who was formerly designated to the Special Management Unit (SMU) at USP Lewisburg."  (Doc. No. 77 ¶ 1.)  He is currently confined at AUSP Thomson.  (Id. ¶ 2.)

A.    Facts Regarding Administrative Exhaustion

The BOP has a "multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment."  (Id. ¶ 3.)  Prior to submitting a formal administrative remedy, an inmate must first pursue informal resolution with staff.  (Id. ¶ 4.)  If the inmate is unable to informally resolve the issue, "he may file 'a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred."  (Id. ¶ 5.)  The Warden of the facility then has twenty (20) days to respond to the inmate's request.  (Id. ¶ 6.)

An inmate may appeal the Warden's response by submitting an appeal (BP-10) to the appropriate Regional Director within twenty (20) days of the date on which the Warden signed

---

[4] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts. (Doc. No. 77.)  Plaintiff has not filed a response to Defendants' statement of material facts in compliance with Local Rule 56.1.  Accordingly, the Court deems the facts set forth by Defendants to be undisputed.  See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

the response to the BP-9.  (<u>Id.</u> ¶ 7.)  The inmate may then appeal the Regional Director's response by submitting an appeal (BP-11) to the BOP's General Counsel within thirty (30) calendar days of the date on which the Regional Director signed the BP-10 response.  (<u>Id.</u> ¶ 8.)  "The Regional Director has 30 days to respond and the General Counsel has 40 days to respond." (<u>Id.</u> ¶ 9.)  An inmate's appeal to the Central Office is the final level of appeal, and "[n]o administrative remedy appeal is considered to have been fully exhausted until it is decided on its merits by the BOP's Central Office."  (<u>Id.</u> ¶¶ 11-12.)

The BOP tracks inmates' "formal administrative remedy filings through its computerized SENTRY database."  (<u>Id.</u> ¶ 13.)  Since Plaintiff has been in the BOP's custody, he has filed 92 administrative remedies.  (<u>Id.</u> ¶ 14.)  During Plaintiff's incarceration, "he has exhausted a total of six administrative remedies."  (<u>Id.</u> ¶ 17.)  Of those six (6), one "concerned a request for compensation as a result of gastro-intestinal illness (Remedy 885094) and five concerned disciplinary hearing appeals."  (<u>Id.</u> ¶¶ 18-19.)  "No remedies concerning the instant allegations in his second amended complaint have been exhausted."  (<u>Id.</u> ¶ 20.)

### B.    Facts Regarding May 25, 2016 Altercation

Plaintiff references an incident that occurred in April or May of 2016 "where he was attacked by his cellmate with a knife and suffered a puncture wound to his hand."  (<u>Id.</u> ¶¶ 21-22.) According to Plaintiff, this "incident occurred shortly after [Defendant] Missigman told [his] cellmate that [Plaintiff] was a child molester and to assault him."  (<u>Id.</u> ¶ 23.)  BOP records show that an incident matching this description occurred on May 25, 2016.  (<u>Id.</u> ¶ 24.)  On that date, Plaintiff and his cellmate were "involved in an unwitnessed cell fight."  (<u>Id.</u> ¶ 25.)  As staff attempted to remove them from the cell, Plaintiff tried "to flush an item that was later discovered to be a 5 ½ inch piece of sharpened metal."  (<u>Id.</u> ¶ 26.)  Medical assessed Plaintiff as having an

abrasion on his hand and assessed his cellmate with "multiple lacerations and abrasions." (Id. ¶¶ 27-28.) Both were written up for fighting, and Plaintiff was written up for also possessing a weapon. (Id. ¶ 29.)

This incident occurred on G-Block, where Plaintiff was housed from March 5, 2016 through June 21, 2016. (Id. ¶ 30.) At the time of the incident, Plaintiff and his cellmate had been living together since October 27, 2015. (Id. ¶ 33.) Defendant Missigman "was assigned to a variable shift that quarter, meaning he worked in various areas where coverage was needed." (Id. ¶ 31.) A review of Defendant Missigman's "daily roster assignments for the month of May up to the date of the incident, May 25, 2016, shows he only worked the housing unit to which [Plaintiff] and his cellmate were assigned on May 9, 2016." (Id. ¶ 32.)

### C. Facts Regarding Inmate Security Designations and Custody Classifications

J. Reibsome, the Case Manager Coordinator at USP Lewisburg, has been employed by the BOP since 2000 and is familiar with Plaintiff. (Id. ¶¶ 34-36.) The Case Manager Coordinator is responsible for "ensuring the Correctional Systems Department at USP Lewisburg operates within BOP and local rules and regulations." (Id. ¶ 37.)

BOP Program Statement 5100.00 sets forth the procedures used "to ensure inmates are assigned the most appropriate security level institution to meet their needs and protect society." (Id. ¶ 38.) "One procedure is the application of a public safety factor (PSF)." (Id. ¶ 39.) The decision to apply a PSF "is based on relevant factual information regarding the inmate's current offense, sentence, criminal history, or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public." (Id. ¶ 40.) Nine PSFs are used "to apply to inmates who are not appropriate for minimum security." (Id. ¶ 41.) "The

11

application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or prior behavior."  (Id. ¶ 42.)

One PSF is "sex offender," which is applied to "an inmate meeting specific criteria, including one whose behavior in the current term of confinement includes any sexual act or contact that is aggressive [or] abusive in nature."  (Id. ¶ 43.)  This PSF was applied to Plaintiff. (Id. ¶ 44.)  "BOP policy requires only the most up to date copy of the classification of a sex offender form be maintained; therefore, it is unclear exactly when the PSF was applied to [Plaintiff]."  (Id. ¶ 45.)  Plaintiff's record "indicates the application of the PSF was likely due to his documented disciplinary history while incarcerated."  (Id. ¶ 46.)  Plaintiff was found to have engaged in sexual acts and assaults because, between 2010 and October 30, 2014, Plaintiff "was found to have committed six prohibited acts of a sexual nature, either making sexual proposals or engaging in sexual acts."  (Id. ¶¶ 47-48.)  Thus, the "sex offender PSF was likely placed based on [staff's] determination that [Plaintiff] engaged in sexual behavior that was abusive and/or aggressive."  (Id. ¶ 49.)

In September 2017, Plaintiff requested that USP Lewisburg staff remove the sex offender PSF "because he felt it was not warranted and affected his physical security."  (Id. ¶ 50.) Plaintiff's case manager "consulted with J. Reibsome" about the issue.  (Id. ¶ 51.)  After a review of Plaintiff's file, "it was determined the PSF classification was not warranted and should be removed."  (Id. ¶ 52.)  At USP Lewisburg, staff are "unlikely to place the sex offender PSF on inmates with repetitive sexual misconduct findings while incarcerated."  (Id. ¶ 53.)  Inmates in the SMU are already in secure housing; "therefore, it is unlikely for a disciplinary violation, generally a code 205 (engaging in a sexual act) or 206 (making a sexual threat or proposal) offense to rise to the level of abusiveness or aggression necessary to warrant the sex offender

PSF." (Id. ¶ 54.)  Instead, staff "generally only apply the sex offender PSF to inmates with

supporting information in their Presentence Investigation Report, or other official

documentation, or inmates with a disciplinary history of sexual assault." (Id. ¶ 55.)  Based on

Plaintiff's documentation, staff determined that the sex offender PSF was unwarranted. (Id.

¶ 56.)

Plaintiff sought informal resolution concerning the PSF on September 5, 2017. (Id. ¶ 57.)

He "was informed that the sex offender PSF was no longer applied and if it ever was, it was in

error." (Id. ¶ 58.)  The use of the word "error" reflected that USP Lewisburg staff would not

have applied the PSF based on a review of Plaintiff's file but was "not meant to indicate the PSF

was wrongfully applied by another institution." (Id. ¶¶ 59-60.)  "Staff at a prior institution may

have considered an incident to rise to the level of abusiveness [or] aggression to warrant

application of the PSF." (Id. ¶ 61.)  Inmate Custody Classification forms are not made available

unless the inmate specifically requests a copy. (Id. ¶ 62.)  If Plaintiff felt unsafe, he could have

requested protected custody, but he did not do so at any time while housed at USP Lewisburg.

(Id. ¶¶ 63-64.)  Moreover, there "is nothing to indicate [Plaintiff] ever raised a concern regarding

the sex offender PSF with staff prior to September 2017." (Id. ¶ 65.)

## IV.   DISCUSSION

Defendants assert the following arguments in support of their motion to dismiss and/or

for summary judgment: (1) any Bivens claims against Defendant Rummel are time-barred; (2)

Plaintiff's due process claim is subject to dismissal because he has failed to allege that any of the

named Defendants designated him as a sex offender; (3) Plaintiff has not alleged that Defendant

Beaver's alleged verbal abuse caused him any physical harm; (4) Plaintiff failed to exhaust his

administrative remedies with respect to his Bivens claims; and (5) the United States is entitled to

judgment on Plaintiff's negligence claim because the BOP was justified in classifying Plaintiff as a sex offender.  (Doc. No. 78 at 12.)

A.     **Administrative Exhaustion Regarding Plaintiff's <u>Bivens</u> Claims**

Defendants Rummel, Beaver, and Missigman maintain that they are entitled to summary judgment with respect to Plaintiff's <u>Bivens</u> claims because he failed to exhaust his administrative remedies.  (Doc. No. 78 at 19-21.)  Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action.  <u>See</u> 42 U.S.C. § 1997e(a); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." <u>See</u> 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  <u>See</u> <u>Williams v. Beard</u>, 482 F.3d 637, 639 (3d Cir. 2007); <u>see also</u> <u>Booth</u>, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  <u>See</u> <u>Nyhuis v. Reno</u>, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  <u>See</u> <u>id.</u>  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004); <u>see also</u> <u>Oriakhi v. United</u>

States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. See Harris, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the

15

administrative policies were not clearly explained to him.  See Warman, 49 F. App'x at 368.

Consequently, an inmate's confusion regarding these grievances procedures does not, alone,

excuse a failure to exhaust.  See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh

v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the

law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'"

(citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies

unavailable to an inmate such that a failure to exhaust may be excused.  See Ross v. Blake, 136

S. Ct. 1850 (2016).  The Court noted "three kinds of circumstances in which an administrative

remedy, although officially on the books, is not capable of use to obtain relief."  See id. at 1859.

First, an administrative procedure is not available "when (despite what regulations or guidance

materials may promise) it operates as a simple dead end—with officers unable or consistently

unwilling to provide any relief to aggrieved inmates."  See id.  Second, a procedure is not

available when it is "so opaque that it becomes, practically speaking, incapable of use."  See id.

Finally, a procedure is unavailable when "prison administrators thwart inmates from taking

advantage of a grievance process through machination, misinterpretation, or intimidation."  See

id. at 1860.  However, "once the defendant has established that the inmate failed to resort to

administrative remedies, the onus falls on the inmate to show that such remedies were

unavailable to him."  See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018).  The Third

Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff,
> an inmate must show (1) that the misrepresentation is one which a reasonable
> inmate would be entitled to rely on and sufficiently misleading to interfere with a
> reasonable inmate's use of the grievance process, and (2) that the inmate was
> actually misled by the misrepresentation.

See Hardy v. Shaikh, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants assert that Plaintiff "never filed a single administrative remedy regarding any of the Bivens claims in his complaint, addendums, and amended complaint." (Doc. No. 78 at 21.) In support of their assertion, Defendants have provided a declaration from Jennifer Knepper, an attorney advisor at USP Lewisburg. (Doc. No. 77-2 at 1-3.) She avers that Plaintiff has filed 92 administrative remedies and has exhausted a total of (6) remedies. (Id. ¶¶ 5-6.) With respect to the exhausted remedies, "one remedy concerned a request for compensation as a result of gastro-intestinal illness (Remedy 885094) and five (5) concerned disciplinary hearing appeals." (Id. ¶ 6.) Plaintiff's Administrative Remedy Generalized Retrieval also indicates that he has never filed any remedies concerning the allegations set forth in the instant case. (Id.; see also Doc. No. 77-2 at 8-54.)

Plaintiff has not responded to Defendants' motion. Attached to his complaint, however, are copies of administrative remedies he submitted in 2017. (Doc. No. 1-1 at 4-7.) These documents suggest that Plaintiff submitted an administrative remedy regarding his classification to the Warden, and that the Warden denied his remedy on October 16, 2017. (Id. at 6.) Plaintiff then apparently appealed to the Regional Office, arguing that the sex offender PSF had erroneously been applied to him. (Id. at 4.) Plaintiff's appeal was initially rejected for his failure to submit four copies of the BP-10 form. (Id. at 5.) On December 7, 2017, however, the Regional Office denied his appeal, concluding that his placement in the SMU was appropriate. (Id. at 7.) Nothing in the record before the Court, however, suggests that Plaintiff ever appealed the Regional Office's response to the Central Office. Plaintiff, therefore, has not refuted the defense that he failed to properly exhaust his Bivens claims prior to filing suit in this Court. Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of

17

Plaintiff's <u>Bivens</u> claims in federal court, and this Court cannot excuse compliance with those requirements, Defendants' motion will be granted on the basis that Plaintiff failed to properly exhaust his administrative remedies with respect to his <u>Bivens</u> claims.[56]

**B.    FTCA Claims**

The United States asserts that they are entitled to summary judgment on Plaintiff's negligence claim because the BOP was justified in classifying him as a sex offender.  (Doc. No. 78 at 18.)  Specifically, the United States asserts that Plaintiff cannot show that "the United States breached any duty to him because he cannot show that the application of the sex offender PSF was erroneous."  (<u>Id.</u> at 25.)  They also note that causation is "dubious" because, even though Plaintiff "alleges that he was the victim of threats and assaults because the sex offender PSF led other inmates to call him a 'chomo,'" he was "sanctioned as the <u>initiator</u> of exactly this kind of activity on at least two prior occasions."  (<u>Id.</u> at 25 n.5.)

The FTCA "provides a mechanism for bringing a state law tort action against the federal government in federal court," and the "extent of the United States' liability under the FTCA is generally determined by reference to state law."  <u>See</u> <u>In re Orthopedic Bone Screw Prod. Liab.</u>

---

[5] Exhibits attached to Plaintiff's complaint indicate that on October 13, 2017, the BOP's Northeast Regional Office received Administrative Claim No. TRT-NER-2018-00522 from Plaintiff.  (Doc. No. 1 at 13-19.)  In that claim, Plaintiff alleged that he suffered from depression, paranoia, and severe mental anguish because the BOP erroneously labeled him as a sex offender.  (<u>Id.</u>)  The Regional Office denied Plaintiff's FTCA administrative claims and notified him that he could bring suit in federal court within six (6) months.  (<u>Id.</u>)  Plaintiff's submission of an FTCA administrative claim, however, does not satisfy the BOP's internal administrative remedy with respect to his <u>Bivens</u> claims.  <u>See</u> <u>Jackson v. United States</u>, No. 19-3560, 2021 WL 1174918, at *4 (E.D. Pa. Mar. 29, 2021); <u>see also</u> <u>Lambert v. United States</u>, 198 F. App'x 835, 840 (11th Cir. 2006) (noting that there "are separate procedures for exhausting tort claims and claims involving the conditions of confinement").

[6] Because the Court has concluded that Plaintiff failed to exhaust his administrative remedies with respect to his <u>Bivens</u> claims, the Court declines to consider Defendants' alternative arguments for dismissal of these claims.

Litig., 264 F.3d 344, 362 (3d Cir. 2001) (quoting Molzof v. United States, 502 U.S. 301, 305

(1992)). In the instant case, Plaintiff asserts a negligence claim under the FTCA. Where a

federal court is presented with a claim brought under the FTCA, it applies the law of the state in

which the alleged tortious conduct occurred. See 28 U.S.C. § 1346(b). In this case, the allegedly

tortious conduct occurred in Pennsylvania, and, therefore, the Court refers to Pennsylvania tort

law to assess the extent of the United States' potential liability for Plaintiff's negligence claims.

To maintain a negligence claim under Pennsylvania law, a plaintiff must demonstrate: "(1) a

duty on the part of the defendant to conform to a certain standard of conduct with respect to the

plaintiff; (2) a breach of that duty by the defendant; (3) a causal connection between the

defendant's conduct and the injury suffered by the plaintiff; and (4) actual loss or damage

suffered by the plaintiff." See Harris v. Oz Directional Drilling, Inc., No. 3:13-cv-2580, 2016

WL 4578150, at *3 (M.D. Pa. June 30, 2016), report and recommendation adopted, 2016 WL

4698635 (M.D. Pa. July 19, 2016).

In its opinion partially remanding this matter, the Third Circuit noted that summary

judgment on Plaintiff's FTCA negligence claim was premature. See McIntosh, 845 F. App'x at

92-93. Specifically, the Third Circuit wrote:

> Program Statement 5100.08 allows a sex offender designation, even without a
> conviction, if "official documentation . . . clearly indicates" the inmate's "behavior
> in the current term of confinement or prior history includes one or more of the
> following elements: . . . (4) Any sexual act or contact not identified above that is
> aggressive or abusive in nature (e.g., rape by instrument, encouraging use of a
> minor for prostitution purposes, incest, etc.)." We agree that determining whether
> a sexual offense is "aggressive or abusive in nature" does require some discretion.
> Thus, if a prison official looked at [Plaintiff's] disciplinary record and determined
> that a sex offender designation was warranted, a federal court could not second-
> guess that determination.
>
> But at this point, the record does not support a conclusion that a prison official made
> a discretionary decision to place the designation in [Plaintiff's] record. Indeed, J.
> Reibsome's declaration states that, upon her review of [Plaintiff's] record, a sex

19

offender designation would not be warranted, based on how USP Lewisburg staff interprets the Program Statement.  See Dkt. #30-1 at 2.  She states that "it is unclear exactly when the PSF was applied," but that the designation "was likely paced based on staff's determination," presumably at another prison, "that [Plaintiff] engaged in sexual behavior that was abusive and/or aggressive."  Id.  This may or may not be true, but with no factual support, the statement is pure speculation, and does not support the District Court's determination that "the record demonstrates that the BOP did in fact follow this procedure when it applied the sex offender PSF to [Plaintiff's] file."  Report and Recommendation, Dkt. #50 at 16; cf. BOP's Acting Regional Counsel's response, Dkt. #1 at 13 ("A review of records shows you have no history of any sexual offenses and are not classified as a sex offender.").  Because there is a factual dispute over when and why the PSF was placed on [Plaintiff's] record, summary judgment was not warranted.

Relatedly, the District Court's alternative holding, that the sexual offender designation was supported by the record, improperly resolved a factual dispute at the summary judgment phase.  And finally, the District Court's conclusion that [Plaintiff] could not show causation because he instigated some of the incidents is also premature at the summary judgment stage.  [Plaintiff] was not given any chance to take discovery.  He may be able to locate evidence to back up his claim that he was attacked or to refute any assertion that he instigated an incident by showing that he was threatened with attack because of the perception that he is a sex offender.

As with the claims dismissed on screening, we express no opinion about whether [Plaintiff] will ultimately succeed on his negligence claims.  But because summary judgment was premature, we will vacate the District Court's April 2, 2019 order and will remand for further proceedings.

See McIntosh, 845 F. App'x at 92-93.  Defendants' motion again asserts the same arguments previously raised and rejected by the Third Circuit as premature.  Because Defendants filed a second motion to dismiss and/or for summary judgment upon remand, the parties have not yet had the benefit of discovery, as noted by the Third Circuit.  The Court, therefore, will not grant Defendants' motion with respect to Plaintiff's FTCA negligence claim and will instead deny the motion without prejudice to Defendants' right to reassert their arguments in a new motion for summary judgment after the parties have had a chance to engage in discovery.

## V.       CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and/or for summary judgment (Doc. No. 76) will be granted in part and denied without prejudice in part.  The motion will be granted with respect to Plaintiff's <u>Bivens</u> claims and denied without prejudice with respect to Plaintiff's FTCA negligence claim.  An appropriate Order follows.