**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RODNEY X.,**[1] | **:** | |
| **Plaintiff** | **:** | |
| | **:** | **No. 1:18-cv-00903** |
| **v.** | **:** | |
| | **:** | **(Judge Kane)** |
| **UNITED STATES OF AMERICA, et al.,** | **:** | |
| **Defendants** | **:** | |

**MEMORANDUM**

Pending before the Court is Defendant the United States of America ("United States")'s

motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

(Doc. No. 94.)  For the reasons set forth below, the Court will grant the motion and direct the

Clerk of Court to close the above-captioned case.

**I.      BACKGROUND**

**A.      Procedural Background**

Pro se Plaintiff Rodney X. ("Plaintiff"), a prisoner in the custody of the Federal Bureau

of Prisons ("BOP"), is currently incarcerated at United States Penitentiary Lee in Jonesville,

Virginia.  He commenced the above-captioned action on April 27, 2018, pursuant to the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, et seq., and Bivens v. Six Unknown Named

Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens").  (Doc. No. 1.)  He

claims, inter alia, that the BOP erroneously classified him as a sex offender in his prisoner file

and that this classification resulted in him being threatened and physically assaulted by other

prisoners while he was incarcerated at United States Penitentiary Lewisburg ("USP Lewisburg")

---

[1]  The Court previously granted Plaintiff's request to be referred to as "Rodney X., a/k/a Rodney Othel McIntosh."  (Doc. No. 73.)

and United States Penitentiary Terre Haute ("USP Terre Haute").  (Id.)  Plaintiff subsequently filed an amended complaint (Doc. No. 5), as well as two (2) addenda and an affidavit (Doc. Nos. 10, 11, 12).  On June 1, 2018, the Court dismissed Plaintiff's Bivens claims concerning due process violations and verbal abuse, as well as his FTCA claim for defamation, and the Court directed service of his amended complaint on the United States so that his FTCA claim for negligence could proceed.  (Doc. Nos. 13, 14.)

On July 31, 2018, the United States filed a motion to dismiss or, in the alternative, for summary judgment, followed by a statement of material facts and supporting brief.  (Doc. Nos. 23, 30, 31.)  The United States argued that: (1) the Court lacked subject matter jurisdiction over Plaintiff's FTCA claim for negligence claim due to the misrepresentation exception and, alternatively, the discretionary function exception; and (2) the United States was entitled to summary judgment on Plaintiff's FTCA claim for negligence because it neither breached a duty nor caused his alleged injuries.  (Id.)

On March 7, 2019, Magistrate Judge Carlson issued a Report and Recommendation, wherein he recommended that the Court grant the United States' motion.  (Doc. No. 50.)  Specifically, Magistrate Judge Carlson concluded that: (1) the misrepresentation exception to the FTCA was inapplicable to Plaintiff's case; (2) the discretionary function exception to the FTCA barred Plaintiff's claim for negligence; and (3) even if the discretionary function exception to the FTCA did not bar Plaintiff's claim for negligence, Plaintiff failed to state a claim.  (Id.)

On March 31, 2019, the Court adopted the Report and Recommendation, overruled Plaintiff's objections (Doc. No. 52), and granted the United States' motion to dismiss or, in the alternative, for summary judgment.  (Doc. No. 54.)  Plaintiff filed a timely notice of appeal (Doc. No. 56), and, on February 4, 2021, the United States Court of Appeals for the Third Circuit

("Third Circuit") vacated, in part, this Court's June 1, 2018 Memorandum and Order dismissing Plaintiff's <u>Bivens</u> claims concerning due process violations and verbal abuse. <u>See</u> <u>McIntosh v. United States</u>, 845 F. App'x 88, 90-91 (3d Cir. 2021) (unpublished). The Third Circuit agreed that dismissal of Plaintiff's claims for libel, slander, and defamation under the FTCA was proper. <u>See</u> <u>id.</u> at 91. The Third Circuit also vacated this Court's March 31, 2019 Order granting the United States' motion to dismiss or, in the alternative, for summary judgment, and concluded that summary judgment on Plaintiff's FTCA claim for negligence was premature. <u>See</u> <u>id.</u> at 91-93. The Third Circuit's mandate issued on March 29, 2021. (Doc. No. 63.)

In an Order dated March 30, 2021, this Court reopened the above-captioned action. (Doc. No. 64.) The Court explained, however, that it could not proceed on Plaintiff's <u>Bivens</u> claims, as pled, because he had named the United States as the sole defendant, and <u>Bivens</u> claims against the United States are barred by sovereign immunity. (<u>Id.</u> at 2-3.) As a result, the Court directed "Plaintiff to file an all-inclusive second amended complaint that sets forth his <u>Bivens</u> due process and Eighth Amendment verbal abuse claims against the individuals who allegedly violated his rights, as well as his FTCA negligence claim against the United States." (<u>Id.</u> at 3 (explaining that "[w]ithout the names of the individuals who allegedly violated his constitutional rights, Plaintiff's <u>Bivens</u> claims [were] subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted").)

Plaintiff subsequently filed a "motion for Court to add Defendants to 28 U.S.C. § 1331" (Doc. No. 65), which the Court construed as his response to its March 30, 2021 Order (Doc. No. 66). In that motion, Plaintiff added Unit Manager Royer ("Royer"), Registered Nurse Tracy Herser ("Herser"), Counselor M. Tatlock ("Tatlock"), Gilbert ("Gilbert"), Rummel, Missigman, and Beaver as defendants. (<u>Id.</u>) On April 19, 2021, the Court deemed the operative pleading in

this matter to consist of Plaintiff's complaint (Doc. No. 1), his three (3) addenda (Doc. Nos. 5, 10, 11), and his "motion for Court to add Defendants to 28 U.S.C. § 1331" (Doc. No. 65).  (Doc. No. 66.)[2]  In addition, the Court transferred Plaintiff's claims against Defendants Royer, Herser, Tatlock, and Gilbert to the United States District Court for the Southern District of Indiana because Plaintiff's <u>Bivens</u> claims against them concerned events that occurred at USP Terre Haute.  (<u>Id.</u>)  The Court also directed service of the complaint upon Defendants Rummel, Missigman, and Beaver.  (<u>Id.</u>)

    After receiving an extension of time (Doc. Nos. 74, 75), Defendants filed a motion to dismiss and/or for summary judgment (Doc. No. 76) on June 21, 2021.  They subsequently filed their statement of material facts and supporting brief on July 6, 2021.  (Doc. Nos. 77, 78.)  Observing that Defendants raised the issue of whether Plaintiff exhausted his administrative remedies, with respect to some of his claims, in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued an Order on July 7, 2021, informing the parties that it would consider the exhaustion issue in the context of summary judgment and that, by doing so, it would consider matters outside the pleadings in its role as factfinder.  (Doc. No. 79 at 1 (citing <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018) and <u>Small v. Camden Cnty.</u>, 728 F.3d 265 (3d Cir. 2013).)  In that Order, the Court also directed Plaintiff to file a brief in opposition addressing the issue of administrative exhaustion, as well as a statement of material facts responding to Defendants' statement within thirty (30) days.  (<u>Id.</u>)  As reflected by the Court's docket, Plaintiff elected not to do so.

---

[2]  For ease of reference, the Court will refer to Plaintiff's operative pleading as the "complaint."

On October 18, 2021, the Court granted in part and denied in part Defendants' motion to dismiss and/or for summary judgment.  (Doc. Nos. 80, 81.)  The Court granted Defendants' motion with respect to Plaintiff's <u>Bivens</u> claims against Defendants Rummel, Missigman, and Beaver based upon Plaintiff's failure to exhaust his administrative remedies with respect to those claims.  (<u>Id.</u>)  The Court also directed the Clerk of Court to defer the entry of judgment in their favor until the conclusion of this action.  (Doc. No. 81.)  However, the Court denied the Defendants' motion with respect to Plaintiff's FTCA claim for negligence against the United States.  (<u>Id.</u>)  Thus, Plaintiff's only surviving claim in this action is his negligence claim against the United States.  (<u>Id.</u>)

On that same date, the Court ordered the United States to file an answer to Plaintiff's complaint within fourteen (14) days.  (<u>Id.</u>)  The Court further ordered the parties to complete discovery within six (6) months of the date on which the United States filed its answer and to file any dispositive motions within forty-five (45) days of the date on which discovery closed.  (<u>Id.</u>)  On November 1, 2021, the United States filed its answer to Plaintiff's complaint.  (Doc. No. 82.)  Thus, the parties were to complete discovery by May 2, 2022, and to file any dispositive motions on or before June 16, 2022.

In accordance with those deadlines, the United States timely filed a motion for summary judgment, along with a statement of material facts and a supporting brief.  (Doc. Nos. 94, 98, 99.)  Although Plaintiff was mailed courtesy copies of his complaint (Doc. Nos. 1, 5, 10, 11, 65) and of the United States' currently pending motion for summary judgment, statement of material facts, and supporting brief (Doc. Nos. 94, 98, 99), and was also granted additional time to file a brief in opposition and a responsive statement of material facts to the United States' motion for summary judgment (Doc. No. 101), Plaintiff has not filed any such response.  Thus, the Court

treats the United States' motion for summary judgment as unopposed.  See M.D. Pa. L.R. 7.6 (providing that a party who fails to file a brief in opposition to a motion "shall be deemed not to oppose such motion").

### B.    Factual Background

In accordance with the Court's Local Rules, the United States has filed a statement of material facts in support of its motion for summary judgment.  (Doc. No. 98.)  Plaintiff did not file his own statement of material facts, responding to the numbered paragraphs set forth in the United States' statement.  Thus, under the Court's Local Rules, the United States' facts are deemed admitted since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes.  First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designated specific facts showing that there is a genuine issue for trial.' 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 1:13-cv-0387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015), aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016) (unpublished) (emphasis in original) (citation omitted).  In fact, the United States advised Plaintiff in its statement of material facts that, "pursuant to Local Rule 56.1, all facts set forth in [its] statement [would] be deemed admitted unless controverted by [Plaintiff] with references to the record supporting his position."  (Doc. No. 98 at 1.)

Accordingly, the material facts in this Memorandum are derived from the United States' statement of material facts.  That being said, the Court has conducted a thorough and impartial review of the record in this matter.  To the extent that there are any disputed issues of material

fact that are relevant to the United States' motion for summary judgment, the Court expressly notes such disputes herein.

### 1.    The May 25, 2016 Incident

Plaintiff, a federal prisoner, was formerly designated to the Special Management Unit ("SMU") at USP Lewisburg (Doc. No. 98 ¶ 1) from September 14, 2015, until June 25, 2018 (Doc. No. 98-2 at 1, ¶ 3).  On May 25, 2016, while Plaintiff was incarcerated there, he and his cellmate were involved in an unwitnessed cell fight.  (Doc. No. 98 ¶ 3.)  As staff attempted to remove both prisoners from the cell, Plaintiff attempted to flush an item that was later discovered to be a five-and-a-half (5½) inch piece of sharpened metal.  (Id. ¶ 4.)  Plaintiff told the responding officers, "we were fighting over disrespect."  (Id. ¶ 5.)  Plaintiff's cellmate also told the responding officers, "[i]t was over disrespect . . . we fought."  (Id. ¶ 6.)  Plaintiff's cellmate further stated, "[g]et me out of this cell, this dude [Plaintiff] jumped me."  (Id. ¶ 7.)

Plaintiff was medically assessed with a small abrasion on his right hand between the thumb and the index finger.  (Id. ¶ 8.)  Plaintiff had no other injuries.  (Id. ¶ 9.)  Plaintiff's cellmate, however, was medically assessed with multiple lacerations and abrasions.  (Id. ¶ 10.)  Both prisoners were written up for fighting, and Plaintiff was also written up for possessing a weapon.  (Id. ¶ 11.)  At the time of the incident (i.e., May 25, 2016), Plaintiff and his cellmate had been living together since October 27, 2015.  (Id. ¶ 12.)

During the disciplinary hearing for the incident report that was issued to Plaintiff for this incident, Plaintiff admitted to fighting with his cellmate.  (Id. ¶ 13.)  Plaintiff further admitted that the incident report accurately described the May 25, 2016 incident (id. ¶ 15) and that he had "caused the incident" (id. ¶ 14).  See (Doc. No. 98-2 at 23 (containing the paragraph that details the "Description of Incident")).

### 2.    Prisoner Security Designation and Custody Classification

J. Reibsome ("Reibsome") is the Case Management Coordinator at USP Lewisburg (id. ¶ 16) and is familiar with Plaintiff (id. ¶ 17).  A case management coordinator's job responsibilities include ensuring the Correctional Systems Department at USP Lewisburg operates within BOP and local rules and regulations.  (Id. ¶ 18.)  The BOP utilizes Program Statement 5100.08 to outline the procedures used to ensure prisoners are assigned the most appropriate security level institution to meet their needs and to protect society.  (Id. ¶ 19.)  One procedure is the application of a public safety factor ("PSF").  (Id. ¶ 20.)  The decision to assign a PSF is based on relevant factual information regarding the prisoner's current offense, sentence, criminal history, or institutional behavior that requires additional security measures to be employed in order to ensure the safety and protection of the public.  (Id. ¶ 21.)  The BOP utilizes nine PSFs to apply to prisoners who are not appropriate for minimum security.  (Id. ¶ 22.)  The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to a prisoner, based on his or her demonstrated current or prior behavior.  (Id. ¶ 23.)  One PSF is that of "sex offender," which is applied to a prisoner meeting specific criteria, including one whose behavior in the current term of confinement includes any sexual act or contact that is aggressive or abusive in nature.[3]  (Id. ¶ 24.)  Examples may be documented by BOP incident reports or other official documentation.  (Id. ¶ 24 n.2.)

### 3.    Plaintiff's Classification as a Sex Offender at a Prior Institution

According to a custody classification form dated October 30, 2014, a sex offender PSF was applied to Plaintiff.  (Id. ¶ 25.)  BOP policy requires only that the most up to date copy of the classification of a sex offender form be maintained and, therefore, it is unclear exactly when

---

[3]  The Court will refer to this PSF as "sex offender PSF."

the sex offender PSF was applied to Plaintiff.  (Id. ¶ 26.)  According to the United States, Plaintiff's disciplinary history indicates the application of the sex offender PSF was likely due to his documented disciplinary history while incarcerated.  (Id. ¶ 27.)  More specifically, between 2010 and the date of the custody classification form (i.e., October 30, 2014), Plaintiff was found to have committed six (6) prohibited acts of a sexual nature, for either making sexual proposals or engaging in sexual acts.  (Id. ¶ 28.)  In incident reports 2162039, 2513113, 2513115, and 2512301, Plaintiff was charged with making sexual proposals/threats.  (Id. ¶ 29.)  In incident reports 2162619 and 2185670, Plaintiff was charged with engaging in sexual acts.  (Id. ¶ 30.)  And, specifically, in incident report 2162619, Plaintiff was charged with engaging in sexual acts and assault.  (Id. ¶ 31.)  Each incident report was sustained by the disciplinary hearing officer.  (Id. ¶ 32.)  Therefore, according to the United States, the sex offender PSF was likely assigned to Plaintiff at a prior institution based upon a determination by BOP staff at such prior institution that Plaintiff had engaged in sexual behavior that was abusive and/or aggressive.  (Id. ¶ 33.)

### 4.    Plaintiff's Classification as a Sex Offender Removed at USP Lewisburg

In September of 2017, Plaintiff approached USP Lewisburg staff concerning the sex offender PSF and requested that it be removed because he felt it was not warranted and affected his physical security.  (Id. ¶ 34.)  Plaintiff's Case Manager consulted with Reibsome concerning whether the sex offender PSF was still warranted.  (Id. ¶ 35.)  In reviewing Plaintiff's file, it was determined that the sex offender PSF was not warranted and should be removed.  (Id. ¶ 36.)  According to the United States, USP Lewisburg staff are unlikely to place the sex offender PSF on prisoners with repetitive sexual misconduct findings while housed in the SMU because prisoners in the SMU are in secure housing and, therefore, it is unlikely for a disciplinary violation, generally a code 205 (engaging in a sexual act) or code 206 (making a sexual threat or

proposal) offense, to rise to the level of abusiveness or aggression necessary to warrant the sex offender PSF. (Id. ¶ 37.) Because that rarely occurs at USP Lewisburg, staff generally only apply the sex offender PSF to (1) prisoners with supporting information in their Presentence Investigation Report or other official documentation or (2) prisoners with a disciplinary history of sexual assault. (Id. ¶ 38.) In this case, based upon Plaintiff's documentation, Reibsome generally "felt" that the sex offender PSF was not warranted for Plaintiff. (Id. ¶ 39.)

On September 5, 2017, Plaintiff attempted informal resolution concerning his sex offender PSF. (Id. ¶ 40.) According to the United States, Reibsome responded to Plaintiff by informing him that the sex offender PSF "was no longer applied" and, if it ever was, "it was in error." (Id. ¶ 41.) To be clear for the record, Reibsome's response specifically states as follows:

> You do not have a Sex Offender Public Safety Factor, nor are you classified as a sex offender. If it was ever placed on you, it was in error. Please see attached custody classification form dated 5-19-17, showing there is no sex offender PSF.

(Doc. No. 96 at 59; id. at 60 (containing the May 19, 2017 custody classification form, which does not include a sex offender PSF).)[4]

According to the United States, the use of the word "error" reflected that USP Lewisburg staff would not have assigned Plaintiff the sex offender PSF based on their review of his file. (Doc. No. 98 ¶ 42; id. ¶ 43 (reiterating that Reibsome's use of the word "error" reflected that USP Lewisburg staff would not have applied the PSF to Plaintiff based on their review of his file).) Also according to the United States, the use of the word "error" was not meant to indicate

---

[4] Based upon the record before the Court, it appears that Plaintiff was assigned the sex offender PSF in his custody classification form either during the year 2014 or sometime prior and that the sex offender PSF had subsequently been removed from his custody classification form either during the year 2017 or sometime prior. Compare (Doc. No. 96 at 18 (containing the October 30, 2014 custody classification form reflecting the "SEX OFFN" PSF) with (Doc. No. 96 at 60 (containing the May 19, 2017 custody classification form reflecting no such "SEX OFFN" PSF)).

that the sex offender PSF was wrongfully applied by BOP staff at a prior institution.  (Id. ¶ 44.)

Rather, the United States asserts, BOP staff at a prior institution may have considered that an

incident rose to the level of abusiveness or aggression to warrant assessing Plaintiff with the sex

offender PSF.  (Id. ¶ 45.)

Additionally, a prisoner custody classification form is not a document that is made

available to a prisoner unless the prisoner specifically requests a copy.  (Id. ¶ 46.)  Further, if at

any time Plaintiff felt unsafe, he could have requested protective custody.  (Id. ¶ 47.)  Plaintiff

testified that he has "never asked for protective custody in [his] life."  (Id. ¶ 48.)  Finally, there is

nothing to indicate that Plaintiff ever raised a concern regarding the sex offender PSF with USP

Lewisburg staff prior to September 2017.  (Id. ¶ 49.)

### 5.    Plaintiff was Once Again Assigned Sex Offender PSF

A review of Plaintiff's latest custody classification form, dated February 26, 2022,

indicates that BOP staff again applied the sex offender PSF to Plaintiff.  (Id. ¶ 50.)  Furthermore,

over the course of Plaintiff's incarceration, he has been found to have committed approximately

eighteen (18) inappropriate sexual acts, threats, or proposals. (Id. ¶ 51.)  Eight (8) of those

incidents have occurred since September 2017.  (Id. ¶ 52.)  To date, Plaintiff has not filed an

administrative remedy or administrative tort claim challenging the re-imposition of the sex

offender PSF to him.  (Id. ¶ 53.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the

motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

As noted supra, when determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants").

## III.    DISCUSSION

The only surviving claim in Plaintiff's complaint is an FTCA claim for negligence against the United States based upon allegations that the BOP erroneously assigned him the sex offender PSF in his custody classification form and that this sex offender PSF resulted in him being threatened and assaulted by other prisoners while incarcerated at USP Lewisburg.  (Doc. Nos. 1, 5, 10, 11, 65.)  The United States argues that it is entitled to summary judgment on Plaintiff's negligence claim based upon two (2) separate grounds: (1) the record reveals that the BOP was justified in assigning Plaintiff the sex offender PSF; and (2) there is no evidence in the record that Plaintiff's assigned sex offender PSF was the reason for the May 25, 2016 altercation with his cellmate.  (Doc. Nos. 94, 98, 99.)  The Court, having reviewed the United States' unopposed motion for summary judgment, agrees with the United States' arguments.

"The United States, 'as a sovereign, is immune from suit unless it consents to be sued.'" S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 332 (3d Cir. 2012) ("Abunabba") (quoting Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008)).  The FTCA, however, authorizes suits against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  See 28 U.S.C. § 1346(b)(1).

Accordingly, "[t]he FTCA is a 'partial abrogation'" of the United States' sovereign immunity, see Abunabba, 676 F.3d at 332 (quoting Gotha v. United States, 115 F.3d 176, 179 (3rd Cir. 1997)), because it authorizes suits against the United States for such negligent or wrongful acts or omissions of federal employees while acting within the scope of their

14

employment.  See 28 U.S.C. § 1346(b)(1); Rinaldi v. United States, 904 F.3d 257, 273 (3d Cir.

2018) (explaining that "[t]he FTCA offers a limited waiver of the federal government's

sovereign immunity from civil liability for negligent acts of government employees acting within

the scope of their employment" (citations omitted)).

The FTCA, however, "'does not itself create a substantive cause of action against the

United States; rather, it provides a mechanism for bringing a state law tort action against the

federal government in federal court.'"  See Lomando v. United States, 667 F.3d 363, 372 (3d Cir.

2011) (quoting In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir.

2001)); CNA v. United States, 535 F.3d 132, 141 (3d Cir. 2008) (explaining that "'[t]he cause of

action in an FTCA claim . . . must come from state tort law" (citation omitted)).

Plaintiff's complaint asserts a state law tort claim for negligence against the United

States.  (Doc. Nos. 1, 5, 10, 11, 65.)  Generally speaking, "[n]egligence is the absence of

ordinary care that a reasonably prudent person would exercise in the same or similar

circumstances."  See Walters v. UPMC Presbyterian Shadyside, 187 A.3d 214, 221 (Pa. 2018)

(citation and internal quotation marks omitted).  Under Pennsylvania law, a negligence claim

"requires a showing of four elements: (1) the defendant had a duty to conform to a certain

standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in

question; and (4) the plaintiff incurred actual loss or damage."  See Pyeritz v. Com., 32 A.3d

687, 692 (Pa. 2011) (citation omitted).

Here, the record reflects that the BOP utilizes Program Statement 5100.08 to outline the

procedures that are used to ensure its prisoners are assigned the most appropriate security level at

their institution in order to meet their needs and to protect society.  (Doc. No. 98 ¶ 19.)  One such

procedure is the application of a PSF.  (Id. ¶ 20.)  The decision to assign a prisoner a PSF is

based upon relevant factual information regarding the prisoner's current offense, sentence, criminal history, and/or institutional behavior, which requires that additional security measures be employed to ensure the safety and protection of the public.  (Id. ¶ 21.)  The BOP utilizes nine (9) PSFs to assign to prisoners who are not appropriate for minimum security (id. ¶ 22), and one of those is a sex offender PSF (id. ¶ 24).  A sex offender PSF is applied to a prisoner meeting specific criteria, including a prisoner whose behavior in the current term of confinement includes any sexual act or contact that is aggressive or abusive in nature.  (Id.)

In this case, between 2010 and the date of Plaintiff's custody classification form dated October 30, 2014 (which assigned him a sex offender PSF), Plaintiff was found to have committed six (6) prohibited acts that were of a sexual nature.  (Doc. No. 98 ¶¶ 25, 28-32.) Specifically, disciplinary hearing officers had determined that Plaintiff was guilty of making sexual proposals/threats on four (4) occasions (id. ¶ 29), engaging in sexual acts on one occasion (id. ¶ 30), and engaging in sexual acts and assault on one occasion (id. ¶ 31).  Based upon this disciplinary record, the United States asserts that the sex offender PSF, as reflected on Plaintiff's October 30, 2014 custody classification form, was appropriately assigned to him.  (Doc. No. 99 at 10.)  Because Plaintiff has not opposed the United States' motion for summary judgment, he has neither challenged the disciplinary hearing officers' findings for each of these six (6) instances of sexual acts, nor argued that each instance would not have warranted the sex offender PSF being assigned to him.

Additionally, in this case, Plaintiff was designated to the SMU at USP Lewisburg on September 14, 2015.  (Doc. No. 98-2 at 1, ¶ 3.)  Approximately two (2) years later, on September 1, 2017 (Doc. No. 96 at 58), Plaintiff questioned the sex offender PSF and requested that it be removed because he did not believe it was warranted and because he believed it

affected his physical security.  (Doc. No. 98 ¶ 34.)  According to the United States, Reibsome responded to Plaintiff by informing him that the sex offender PSF "was no longer applied" and, if it ever was, "it was in error."  (Id. ¶ 41.) Again, to be clear for the record, Reibsome's response specifically states as follows:

> You do not have a Sex Offender Public Safety Factor, nor are you classified as a sex offender.  If it was ever placed on you, it was in error.  Please see attached custody classification form dated 5-19-17, showing there is no sex offender PSF.

(Doc. No. 96 at 59; id. at 60 (containing the May 19, 2017 custody classification form, which does not include a sex offender PSF).)

Having reviewed the record, the Court generally agrees with the United States that the evidence of record suggests that the sex offender PSF was likely assigned to Plaintiff before he arrived at USP Lewisburg due to his history of disciplinary conduct involving sexual acts.  That being said, the Court has conducted an independent and thorough review of the record and concludes that the following specific facts have not been fully developed for the Court: (a) when, exactly, in 2014 (or prior to 2014) the sex offender PSF was assigned to Plaintiff; (b) who assigned the sex offender PSF to Plaintiff; and (c) the precise basis for its assignment.  In fact, it appears that the United Sates has conceded as much by way of Reibsome's declaration, which was submitted in connection with its motion for summary judgment.  (Doc. No. 96 at 1-3.)  More specifically, Reibsome declares as follows:

> I have reviewed a copy of a prior inmate custody classification form . . . dated October 30, 2014, showing a [sex offender PSF] was applied to [Plaintiff].  BOP policy requires only the most up to date copy of the classification form be maintained; therefore, it is unclear exactly when the [sex offender] PSF was applied.  However, a review of [Plaintiff's] record indicates the application of the [sex offender] PSF was likely due to his documented disciplinary history while incarcerated.

17

(Id. at 2, ¶ 7 (emphasis added); id. at 18 (containing the October 30, 2014 custody classification form, which reflects a PSF of "SEX OFFN").)

Ultimately, it is the Court's view that these omissions which exist in the record are a function of the fact that the sex offender PSF was assigned to Plaintiff before he was designated to the SMU at USP Lewisburg on September 14, 2015.  In other words, USP Lewisburg staff do not have knowledge concerning these specific facts because they did not assign Plaintiff the sex offender PSF; BOP staff from a prior institution assigned Plaintiff this PSF.

However, even viewing these omissions in the record in the light most favorable to Plaintiff, the non-movant, the Court still fails to see how USP Lewisburg staff breached any duty owed to Plaintiff concerning their handling of his sex offender PSF.  More specifically, the record reflects that, once Plaintiff's concerns were brought to the attention of USP Lewisburg staff, his concerns were considered, the sex offender PSF and custody classification form were reviewed, and USP Lewisburg staff ultimately determined that the sex offender PSF was no longer reflected in his custody classification form, if it ever was.[5]  Further, and based upon the record before the Court, there is no evidence that Plaintiff brought his concerns to the attention of USP Lewisburg staff prior to September of 2017, such that the Court could conclude that the United States failed to respond to, or act upon, his request concerning the sex offender PSF.

---

[5]  As noted above, the BOP's response to Plaintiff's informal resolution attempt states as follows:

> You do not have a Sex Offender Public Safety Factor, nor are you classified as a sex offender.  If it was ever placed on you, it was in error.  Please see attached custody classification form dated 5-19-17, showing there is no sex offender PSF.

(Doc. No. 96 at 59; id. at 60 (containing the May 19, 2017 custody classification form, which does not include a sex offender PSF).)

Accordingly, for all of these reasons, the Court concludes that the record does not establish a breach of a duty on the part of USP Lewisburg staff concerning their handling of Plaintiff's sex offender PSF while he was incarcerated there.  Indeed, to the extent that the sex offender PSF was erroneously assigned to Plaintiff in the first place, the record does not support attributing that error to USP Lewisburg staff.  There is simply no evidence in the record that USP Lewisburg staff assigned Plaintiff the sex offender PSF.

Given, however, the omissions in the record discussed above, the Court will assume arguendo that Plaintiff has established a breach of duty for his negligence claim.  However, despite this assumption, Plaintiff still faces an unsurmountable problem here: he has not shown that any alleged negligent act or failure to act on the part of USP Lewisburg staff was the cause of a specific, articulated injury sustained by him.

In order to establish a negligence claim under Pennsylvania law, a plaintiff must allege "sufficient facts to show that the defendant's negligen[t act] was both the cause-in-fact and the legal, or proximate, cause of her injuries."  See Straw v. Fair, 187 A.3d 966, 993 (Pa. Super. 2018); Flickinger's Est. v. Ritsky, 305 A.2d 40, 42-43 (Pa. 1973) (discussing the difference between factual and proximate causation in the context of a negligence claim).  "[A] negligent act is a cause-in-fact of the plaintiff's injuries "if the harmful result would not have come about but for the negligent conduct."  See Straw, 187 A.3d at 993 (citation and internal quotation marks omitted); Whitner v. Von Hintz, 263 A.2d 889, 894 (Pa. 1970) (explaining that "[t]he Pennsylvania but for formulation . . . says that there is liability if the harmful result would not have come about but for the negligent conduct").  On the other hand, a negligent act is the proximate or legal cause of the plaintiff's injuries where the act "was a substantial factor in bringing about the harm inflicted upon a plaintiff."  See Straw, 187 A.3d at 993 (citation and

internal quotation marks omitted); <u>Ford v. Jeffries</u>, 379 A.2d 111, 114 (Pa. 1977) (explaining that the legal or proximate cause of harm involves whether the plaintiff has shown that the defendant's conduct, although a cause in the but for sense, is a substantial factor or a substantial cause, as opposed to an insignificant cause in bringing about the plaintiff's harm (citation and internal quotation marks omitted)).

Here, the record reveals that Plaintiff was deemed the initiator of the May 25, 2016 altercation with his cellmate.  More specifically, during the disciplinary hearing for the incident report that was issued to Plaintiff for this altercation, Plaintiff admitted to the following: the incident report accurately described the altercation (Doc. No. 98 ¶ 15; Doc. No. 98-2 at 21; <u>id.</u> at 23); he was fighting with his cellmate (<u>id.</u>); and he had "caused the incident" (Doc. No. 98 ¶ 14; Doc. No. 98-2 at 2).  Plaintiff has not challenged these admissions, the incident report for the March 25, 2016 altercation, or the disciplinary hearing officer's findings concerning that incident report.  Accordingly, Plaintiff has not created a genuine dispute of material fact as to whether he was the initiator of the May 25, 2016 incident.

As a result, the Court is unable to conclude that the handling of Plaintiff's sex offender PSF by USP Lewisburg staff was the factual or legal cause of the altercation with his cellmate on May 25, 2016.  See <u>Straw</u>, 187 A.3d at 993 (stating that "a negligent act is a cause-in-fact of the plaintiff's injuries if the harmful result would not have come about but for the negligent conduct" (citation and internal quotation marks omitted)); <u>see id.</u> (stating that a negligent act is the proximate or legal cause of the plaintiff's injuries where the act "was a substantial factor in bringing about the harm inflicted upon a plaintiff" (citation and internal quotation marks omitted)).

20

While the United States' statement of material facts addresses only this May 25, 2016 incident, the Court, having conducted a thorough and independent review of the record, observes that Plaintiff's complaint appears to allege, albeit broadly, that he endured various incidents of threats and physical harm as a result of the BOP's erroneous sex offender PSF.  (Doc. No. 1 at 1-3; Doc. No. 5 at 1-2; Doc. No. 10 at 2; Doc. No. 11 at 1-4; Doc. No. 65 at 1, 3-4.)[6]  The Court further observes that Plaintiff has attached several affidavits to his complaint.  (Doc. No. 1 at 4-11.)  Specifically, he has filed several of his own affidavits (id. at 4,5, 10-11), as well as the affidavits of two (2) fellow prisoners, Montez Bridges (id. at 6-7) and Rafael Garcia (id. at 8-9).  Even crediting the allegations in Plaintiff's complaint and the affidavits attached thereto, the Court finds that Plaintiff has not created a genuine dispute of material fact as to the causation element for his negligence claim against the United States.

Plaintiff's alleged incidents of threats and physical harm are far too broad and vague to create any genuine dispute of material fact as to whether the USP Lewisburg staff's handling of Plaintiff's sex offender PSF was a factual and legal cause of any specific and articulated injury he suffered.  Although the Court is required to accept the complaint's allegations as true and construe them in the light most favorable to Plaintiff at the motion to dismiss stage, the Court is not required to do so at the summary judgment stage.  Instead, at this stage, it is Plaintiff who bears the burden of coming forward with sufficient evidence to create a genuine dispute of material fact regarding a potential causal connection between the conduct of USP Lewisburg

---

[6]  Notably, some of these alleged incidents predate his incarceration at USP Lewisburg.  See, e.g., (Doc. No. 5 (discussing incidents that allegedly occurred in 2013 and 2014); Doc. No. 65 (discussing incidents that allegedly occurred in 2013 and 2015, prior to Plaintiff being designated to the SMU at USP Lewisburg)).

staff in their handling of his sex offender PSF and any injury he allegedly sustained as a result of such conduct.

By way of example, Plaintiff's complaint contains allegations that he got into physical altercations with his cellmates in May of 2016 (Doc. No. 5 at 2) and September of 2017 (id. at 3), during the time period when he was housed at USP Lewisburg.  The Court finds that Plaintiff's allegations concerning these altercations fail to demonstrate that USP Lewisburg staff's handling of Plaintiff's sex offender PSF was the factual and legal cause for these altercations.  Indeed, Plaintiff alleges that, with respect to the May 2016 incident, staff wrote him an incident report for fighting and possessing a weapon.  (Id. at 2.)  And, with respect to the September 2017 incident, Plaintiff has attached an incident report to his complaint, which he received as a result of the incident.  (Id. at 3, 6.)  But despite being granted an opportunity to conduct discovery in this matter, Plaintiff has not come forward with evidence to challenge these incident reports or to otherwise show that USP Lewisburg staff's handling of his sex offender PSF caused these physical altercations with his cellmates.  See Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000) (explaining that, "[a]t summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial" (citing Celotex, 477 U.S. at 324)).

By way of further example, Plaintiff's complaint also contains allegations that, in "April to May 2016[,]" Missigman encouraged Plaintiff's cellmate to "beat [Plaintiff's] ass" for being "a faggot child molester" and that his cellmate took Missigman "up on his offer and the fight for [Plaintiff's] life ensued."  (Doc. No. 65 at 4.)  Again, however, despite being afforded the opportunity to conduct discovery in this matter, Plaintiff has not gone beyond these allegations in his complaint and pointed to any evidence of record which would corroborate these allegations

22

or which would support a finding that this incident was factually and legally caused by USP Lewisburg staff's handling of his sex offender PSF.  See Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 773 (3d Cir. 2013) (explaining that "[a] party opposing a motion for summary judgment has significantly more material at his disposal than when opposing a motion to dismiss, given that he may cite evidence gained during discovery" and, thus, he must go beyond the pleadings and designate specific facts which show that there is a genuine issue for trial).  Moreover, the Court reiterates that any Bivens claim against Missigman has already been dismissed from this litigation based upon Plaintiff's failure to exhaust his administrative remedies with respect to such claim.

Finally, as it relates to the affidavits that are attached to Plaintiff's complaint, the Court concludes that these affidavits suffer from similar deficiencies.  More specifically, although Plaintiff has submitted his own affidavits, those affidavits contain only general and conclusory allegations that he had "incurred multiple fights" (Doc. No. 1 at 4) and has had to fight for his "life over five times" (id. at 5).  Such self-serving allegations cannot be used, however, to avoid summary judgment when unexpanded upon and when uncorroborated by other evidence in the record.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (explaining that the object of Rule 56 "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit" (citations omitted)).

Additionally, although Plaintiff has submitted the affidavits of Montez Bridges ("Bridges") and Rafael Garcia ("Garcia"), fellow prisoners within the BOP's custody, the Court concludes that their affidavits fail to offer evidentiary support sufficient to create a genuine dispute of material fact concerning causation for Plaintiff's negligence claim.  Bridges and Garcia's affidavits, which appear as mirror images of one another, set forth the following

statements: they were "made aware" that Plaintiff was a sex offender by way of "a male custody classification form[,]" which they had "witness[ed;]" they knew that Plaintiff "had been in multiple fights because of being classified . . . as a sex offender[;]" and they were "order[ed,]" via prisoner rules governing gang members, to physically harm Plaintiff because "of his sex offender status."  (Doc. No. 1 at 6, 8.)

The Court finds, however, that there are no specific facts contained in their affidavits concerning when they "witness[ed]" the custody classification form, which federal institution they were housed at when they "witness[ed]" the form, or how, exactly, they had "witness[ed]" the form.  (Id.)  There are also no specific facts regarding whether they physically harmed Plaintiff and, if they did, at which federal institution this physical harm allegedly occurred or, for that matter, any other details surrounding such incidents of harm.  Furthermore, the Court notes that, with respect to Garcia's affidavit, he generally cites to "2014[,]" a timeframe prior to Plaintiff's incarceration at USP Lewisburg.  (Id. at 8.)  And, finally, the Court notes that, with respect to Bridges' affidavit, he generally cites to "2015[,]" but does not specify when in 2015 such that it is unclear in the affidavit whether Plaintiff was even incarcerated at USP Lewisburg at that point in time.  Thus, for all of these reasons, the alleged statements in Bridges and Garcia's affidavits have not been fully developed or supported by other evidence in the record such that these statements could create a genuine dispute of material fact as to whether USP Lewisburg staff's handling of Plaintiff's sex offender PSF was the factual and legal cause of a specific injury he allegedly suffered.

Accordingly, for all of these reasons, the Court concludes that the record lacks adequate evidence to create a genuine dispute of material fact concerning two (2) elements that are necessary to prove Plaintiff's FTCA claim for negligence against the United States—i.e., breach

of duty and causation.  As such, the Court will grant the United States' motion for summary judgment.[7]

## IV.   CONCLUSION

To conclude, the Court will grant the United States' motion for summary judgment and direct the Clerk of Court to close this case.  An appropriate Order follows.

---

[7]   In connection with its discussion, the Court notes a long-standing principle that underlies this litigation: BOP staff, including staff at USP Lewisburg, must be afforded discretion in making decisions concerning the security classifications of the prisoners for whom it is responsible.  This includes PSF classifications, which are used to ensure that its prisoners are assigned the most appropriate security level institution in order to meet their needs and to protect society.  See Turner v. Safley, 482 U.S. 78, 84-85 (1987) (explaining that: "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform[;]" that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government[;]" and that this "task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint" (internal citation and internal quotation marks omitted)); Whitley v. Albers, 475 U.S. 312, 321-22 (1986) (stating that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security" (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979))).